IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RODNEY ANDREW McNEIL,** | * |
| **Plaintiff,** | * |
| | *    Civ. No. DLB-24-0735 |
| v. | * |
| **DET. BECKER,** *Maryland State Police*, *et al.*, | * |
| | * |
| **Defendants.** | * |
| | * |

**MEMORANDUM OPINION**

Self-represented plaintiff Rodney McNeil filed an amended complaint in this civil rights action alleging that defendants Detective Bronson Becker, City of Cumberland Police Department,[1] State Trooper Whorton; State Police Sergeant Smith; and State Trooper Deaner violated his constitutional rights during a traffic stop that included an unlawful search of both his person and vehicle, an illegal detention, and an arrest on state criminal charges. The criminal charges were dismissed due to Fourth Amendment violations, and McNeil seeks damages for the defendants' actions.

McNeil filed a motion for summary judgment, ECF 12, a supplement, ECF 18, and an amended motion and memorandum, ECF 37-1, 37-2. The Court considers the arguments in his amended motion and memorandum. ECF 41. Whorton, Smith, Deaner, and Becker oppose the motion. ECF 46, 47.

---

[1] Although McNeil states Becker's title is Maryland State Police Detective, ECF 7, at 2, Becker has clarified that his full name is Bronson Becker, and he is employed by the City of Cumberland Police Department as a detective. ECF 26, at 2; ECF 49-2, at 1. The Clerk shall revise the case caption and docket.

Whorton, Smith, and Deaner (collectively, "State Police") have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 23. On May 8, 2025, the Court advised McNeil that his filing labeled "Motion to Strike Defendants' Motion to Dismiss or in the Alternative For Summary Judgment" (ECF 31) is accepted as his response to the State Police's dispositive motion. ECF 41. On June 3, Becker, who previously filed an answer, ECF 26, filed a motion for summary judgment. ECF 49. On June 16, 2025, McNeil filed a motion for leave to respond to the State Police's dispositive motion and to Becker's answer. ECF 51. McNeil may not file a second response to the State Police's dispositive motion. Further, the Court already advised McNeil in its May 8 Order that he may not file a response to Becker's answer. ECF 41, at 4. The motion is denied. McNeil will, however, have the opportunity to respond to Becker's dispositive motion.

No hearing is necessary on the dispositive motions filed by McNeil and the State Police. *See* Loc. R. 105.6 (D. Md. 2023). McNeil's motion for summary judgment and the State Police's motion, construed as a motion for summary judgment, are denied. Additionally, McNeil's two pending motions for subpoenas, ECF 13, 14, are denied without prejudice.

I.     **Background**

McNeil alleges that on May 3, 2023, Becker, Whorton, Smith, and Deaner activated their emergency lights and pulled him over for an alleged traffic violation. ECF 7, at 6. Becker approached the vehicle and requested McNeil's driver's license, which McNeil provided. *Id.* Becker ordered McNeil to exit the vehicle, and McNeil complied. *Id.* Becker and Deaner immediately searched McNeil, with Becker on his right side and Deaner on his left side. *Id.* The body search was "sexually invasive" as Becker and Deaner were "repeatedly moving their hands on and around Plaintiff's groin area and backside in an attempt to discover evidence or contraband in public view." *Id.* Becker recovered a package of 1.4 grams of cocaine from McNeil's right front

watch pocket of his jeans and $616.00 from the right front pocket of his jeans. *Id.* at 7. Deaner recovered three cell phones from McNeil's left front pocket of his jeans. *Id.* Whorton and Smith searched the vehicle while Becker and Deaner conducted the body search. *Id.* at 8–9. Becker handcuffed McNeil, and Becker and Deaner transported him to the Allegany County Detention Center ("ACDC"). *Id.* The roadside events took place between 10:00 a.m. and 11:00 a.m. *Id.*

McNeil received a traffic warning at approximately 1:00 p.m. at ACDC, and his license was returned to him when he was released from ACDC on May 4, 2023. *Id.* at 9. He did not receive a traffic warning or citation before the body search and the recovery of cocaine by Becker. *Id.* at 8.

On September 5, 2023, McNeil appeared in the District Court for Allegany County, Maryland on criminal charges stemming from the traffic stop, Case No. D-121-CR-23-000667. *Id.* at 7. McNeil pled not guilty and requested a jury trial, which was scheduled for December 5, 2023 in the Circuit Court for Allegany County, Case No. C-01-CR-23-000584. *Id.* In the criminal proceedings, McNeil received discovery, which included Becker and Whorton's report that alleges 1.4 grams of cocaine was recovered from McNeil during the body search and 5 grams of marijuana were recovered from McNeil's vehicle. *Id.* at 7–8. The chain of custody report does not note any controlled dangerous substance were recovered or admitted for testing. *Id.* at 8. On December 15, 2023, the criminal case was dismissed due to Fourth Amendment violations. *Id.*

McNeil reasserts several of these allegations in his memorandum in support of his motion for summary judgment, which he affirmed under penalty of perjury. ECF 12-1, at 21. He acknowledges that he was pulled over for speeding and the officers searched his vehicle because they smelled marijuana coming from the vehicle. *Id.* at 2. He states he was not given a citation or warning until 1 p.m., hours after he was stopped, and his license was not returned until the next

3

day. He asserts that the alleged cocaine was not apparent until the officer reached inside his pocket and felt the baggie. *Id.* at 6.

McNeil filed, as an exhibit to his motion for summary judgment, what appears to be a May 3, 2023 incident report completed by Becker. ECF 12-2. Becker reported that Whorton conducted a traffic stop of McNeil after Whorton observed McNeil commit a traffic violation. *Id.* at 1. Whorton asked McNeil to exit the vehicle and began a search of the vehicle "based on probable cause that he had gained on his traffic stop." *Id.* A search was completed roadside and "the following items were located *inside of the vehicle*": 1.4 grams of suspected crack cocaine; 5 grams of suspected marijuana, and $616. *Id.* (emphasis added).

In support of their dispositive motion, Whorton, Smith, and Deaner submit a declaration from Whorton that describes the traffic stop somewhat differently. ECF 25-1. Whorton declares that McNeil was the target of an ongoing narcotics investigation by the Allegany County Narcotics Task Force and that Becker was coordinating the investigation. ECF 25-1, ¶ 2. Before the May 3, 2023 traffic stop, Becker advised Whorton that a tracking device was placed on McNeil's vehicle pursuant to a court order. *Id.* ¶ 3. Becker coordinated with the State Police to stop McNeil's vehicle if any traffic violations were observed. *Id.* ¶ 6. Becker was monitoring the tracking device on McNeil's vehicle during the operation. *Id.* On May 3, 2023, Whorton observed a vehicle matching the description of McNeil's traveling 81 miles per hour in a 70 mile per hour zone and then continuing at 75 miles per hour in a zone marked 65 miles per hour. *Id.* Whorton conducted the traffic stop. *Id.* Becker was not present at any time during the traffic stop. *Id.* ¶ 9. The driver of the vehicle was identified as McNeil. *Id.* ¶ 10. As Whorton approached the vehicle, he detected the odor of marijuana coming from inside, and McNeil was removed from the vehicle. *Id.*

4

Deaner, Smith, and Whorton then searched the vehicle, and they recovered a baggie of marijuana later determined to contain five grams. *Id.* ¶ 11. Whorton approached McNeil and, before searching him, saw the top of a plastic baggie sticking up from McNeil's waistband. *Id.* ¶ 12. Through his "training, knowledge, and experience" Whorton knew that narcotics distributors will often package contraband in plastic baggies. *Id.* The baggie was removed, and Whorton observed what appeared to be cocaine that was later determined to be 1.4 grams of cocaine. *Id.*

Next, Whorton conducted a standard search of McNeil for additional narcotics. *Id.* ¶ 13. The search included McNeil's groin and buttocks where Wharton knew, through his "training, knowledge, and experience," contraband is commonly concealed. *Id.* At no time was McNeil "exposed" to the public. *Id.* ¶ 14. McNeil was arrested and transported to ACDC. *Id.* ¶ 15. The total time between the initial stop and McNeil's arrival at the detention center was 55 to 65 minutes. *Id.* ¶ 16.

The State Police filed the chain of custody log requesting laboratory examination of the suspected crack cocaine, the suspected marijuana, and three cell phones. ECF 25-2.

In McNeil's amended memorandum in support of his motion for summary judgment, which he again affirmed under penalty of perjury, McNeil insists that, on May 4, 2023, Whorton provided a written narrative of the traffic stop and search, and that narrative, unlike the declaration Whorton prepared for this case, did not mention an ongoing investigation, a tracking device, or the visibility of the baggie sticking out of McNeil's pocket. ECF 37-2, at 1–2, 7. According to McNeil, these purported facts were not disclosed to him before his criminal trial. *Id.* at 2. He also asserts that, contrary to the State Police's assertions, Becker was present at the traffic stop. *Id.* at 3.

5

**II.    Standard of Review**

The State Police move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

McNeil received sufficient notice that the State Police's motion may be treated as a summary judgment motion. The Court sent notice advising McNeil that the motion could be construed as one for summary judgment and could result in the entry of judgment against him. ECF 24. Moreover, the motion, identifying summary judgment as possible relief, *see* ECF 23, provided sufficient notice for McNeil to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Thus, the Court is satisfied that McNeil has been advised that the State Police's motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III. Discussion

#### A. State Police Motion for Summary Judgment

The State Police assert they are entitled to summary judgment because they enjoy qualified immunity on McNeil's federal constitutional claims of unlawful search of his person and vehicle, detention, and arrest. ECF 23-1, at 5–10.

> Officers are immune from liability "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have been known." *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 818 (1982)] (emphasis added). This standard leads to two questions: (1) whether any right was violated,

7

> (2) whether that right was "clearly established" at the time of the alleged violation. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). . . .
>
> [T]o conclude that a right is "clearly established," [the court] must inquire whether an objectively reasonable officer in the defendant's shoes would "understand that what he is doing violates that right." *Anderson* [*v. Creighton*, 483 U.S. 635, 640 (1987)]. [The court] examine[s] the alleged right at a "high level of particularity." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). . . . But, . . . a rejection of excessive generality does not equate to an insistence on exactitude. Few situations are *exactly* the same and to require that plaintiffs produce identical precedent would transform qualified immunity into a grant of absolute immunity for defendants.

*Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025). To determine whether any right was violated, the Court looks to the applicable law.

> A traffic stop "constitutes a 'seizure' under the Fourth Amendment and is thus subject to a reasonableness requirement." *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). A traffic stop is reasonable under the Fourth Amendment if (1) it was "legitimate at its inception" and (2) "the officer's actions during the seizure were reasonably related in scope to the basis for the traffic stop." *United States v. Bowman*, 884 F.3d 200, 209 (4th Cir. 2018) (quoting first *United States v. Hill*, 852 F.3d 377, 381 (4th Cir. 2017), then quoting *United States v. Williams*, 808 F.3d 238, 245 (4th Cir. 2015)).

*Carey v. Wolford*, Civ. No. BAH-22-0782, 2024 WL 3568960, at *5 (D. Md. July 29, 2024).

In their opposition to McNeil's motion, the State Police correctly assert that "[n]early every fact relevant to the probable cause analysis is in dispute," including whether a tracking device was placed on McNeil's vehicle before the stop, whether there was an ongoing narcotics investigation into McNeil, when the decision was made to search McNeil, whether Becker was present at the scene, and whether Whorton saw the baggie containing cocaine sticking out from McNeil's waistband. ECF 46, at 5. Despite these factual disputes, the State Police insist that they are entitled to qualified immunity because "the presence of probable cause [was] *arguable or subject to legitimate question*." ECF 23-1, at 5 (citing *Cox v. Hainey,* 391 F.3d 25, 31 (1st Cir. 2004)) (emphasis in br.); ECF 46, at 5 (same). It is true that the State Police are entitled to qualified

8

immunity if the question of whether they had probable cause is "not 'beyond debate.'" *Orem v. Gillmore*, 813 F. App'x 90, 92 (4th Cir. 2020) (quoting *Mullenix v. Luna*, ––– U.S. –––, 136 S. Ct. 305, 308 (2015)); *see id.* ("Qualified immunity applies if there is ... arguable probable cause[.]" (quoting *Branch v. Gorman*, 742 F.3d 1069, 1072 (8th Cir. 2014))).

The State Police have not established that the presence of probable cause was not beyond debate or that it was arguable or subject to legitimate question. To find that the State Police are qualifiedly immune from suit in this case, the Court would have to credit the police's version of the story, discredit McNeil's, and ignore core disputed facts about the stop and search. Those disputed facts include but are not limited to whether McNeil had been observed during a narcotics investigation before the stop, who was present during the traffic stop, whether police saw the baggie in McNeil's waistband before they searched his person, and whether the cocaine was discovered inside the vehicle or on McNeil. Given the extent and nature of the disputed material facts, the Court cannot find as a matter of law that the presence of probable cause was not beyond debate. The defendants are not entitled to qualified immunity on the current record. The State Police's motion is denied.

**B. McNeil's Motion for Summary Judgment**

McNeil's motion for summary judgment is denied because of the substantial number of disputed material facts. In particular, McNeil points out the discrepancy between the May 3, 2023 incident report, ECF 12-2, which says nothing about an ongoing narcotics investigation, GPS tracking, or the observation of a plastic baggie sticking out of McNeil's waistband, and Whorton's December 10, 2024 declaration, ECF 25-1, which reference these events. ECF 37-2, at 1–2. McNeil asserts the Whorton declaration is an attempt to "alter the historical facts surrounding the basis for probable cause" to search him on May 3, 2023. *Id.* at 1. McNeil further notes that during

9

the criminal proceedings, no information about electronic surveillance of him was disclosed, which McNeil believes further supports his assertion that the State Police are attempting to obfuscate the facts of the search. *Id.* at 2. Additionally, Becker asserts he was not present at the traffic stop, ECF 47, at 3, but McNeil has submitted evidence that he was, ECF 37-2, at 3. Because there are a substantial number of genuinely disputed material facts, McNeil's motion for summary judgment is denied.

### IV. Appointment of Counsel

McNeil's claims may move forward. The numerous factual disputes warrant discovery and relevant legal analysis. "[D]istrict courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so where the case of an indigent person presents exceptional circumstances." *Jenkins v. Woodard*, 109 F.4th 242, 247 (4th Cir. 2024) (citation and quotations omitted). Exceptional circumstances exist if (1) plaintiff has a "colorable claim" and (2) considering the claim's objective complexity and his subjective abilities, plaintiff "lacks the capacity to present it." *Id.* (citation and quotations omitted). McNeil has a colorable claim, and he does not have the capacity to present it. The Court finds exceptional circumstances warrant the appointment of an attorney to represent him.

### V. McNeil's Motions for Subpoenas

McNeil filed two motions for subpoenas seeking the May 3, 2023 State Police dashboard video footage of the traffic stop, ECF 13, and the May 3, 2023 video footage from the receiving area at ACDC from approximately 11:00 a.m. to 2:00 p.m., ECF 14. The Court construes these motions as requests for discovery.

A scheduling order has not yet been entered, and discovery may not commence before a scheduling order has been issued by this Court. *See* Loc. R. 104.4 (D. Md. 2023). Counsel will be

10

appointed for McNeil, and thereafter the Court will enter a scheduling order. McNeil's request for the issuance of subpoenas is denied without prejudice. To the extent that the video footage that McNeil seeks is in the care and control of the defendants, they are directed to retain the footage until further order of the Court.

## VI.   Conclusion

For the reasons discussed in this memorandum opinion, McNeil's motion for summary judgment is denied; Whorton, Smith, and Deaner's motion, construed as a motion for summary judgment, is denied; and McNeil's motions for subpoenas are denied without prejudice. Whorton, Smith, and Deaner are directed to file an answer to the amended complaint. Becker's dispositive motion remains pending. Counsel will be appointed to represent McNair. A separate Order follows.

| | |
|---|---|
| July 2, 2025 | _____ |
| Date | Deborah L. Boardman |
| | United States District Judge |